OPINION OF THE COURT
Richard L. Buchter, J.
This motion to suppress physical evidence presents the novel issue of whether a defendant may obtain as discovery from the People voice exemplars of two police officers based on allega *241 tions that the officers made a false 911 call as a predicate to stop and search the defendant’s vehicle.
A Mapp / Dunaway hearing having been held before this court on February 20, 2003, the court now makes the following findings of fact and conclusions of law:
Findings of Fact
At approximately 12:20 a.m. on April 17, 2001, Police Officer Sean Corcoran was on uniform routine radio motor patrol with Police Officer Thomas Speciale when they received a transmission for “shots fired” at 111th Road and Francis Lewis Boulevard. The transmission also included a description of a beige or cream jeep possibly involved in the shooting. The officers immediately responded to the above location where they did not observe anything pertinent to the investigation.
Officer Corcoran then called the dispatcher to request a callback number or address relative to the 911 call.
Upon obtaining the address of the call, which was 112-01 Francis Lewis Boulevard, the officers went to that location where they observed a New York City public telephone. No one was present in the area.
The officers then returned to 111th Road and Francis Lewis Boulevard where they then observed a gold jeep parked three or four car lengths from the corner with its parking lights on and the motor running.
The officers pulled up to the jeep where the defendant herein was seated in the driver’s seat. Police Officer Corcoran approached the defendant while Officer Speciale approached the passenger side door.
Officer Corcoran asked the defendant to step out of his car and show his license, registration, and proof of insurance. The defendant exited the vehicle and took out his wallet.
From his position in the street, Officer Speciale shined his flashlight into the vehicle and then indicated by a gesture to Officer Corcoran that there was a gun in the car. Officer Speciale reached through the open passenger window and retrieved the gun from the console.
Thereafter, Officer Corcoran handcuffed the defendant and placed him on a van across the street. The officer then briefly frisked the defendant for other weapons and placed him in the patrol car. Officer Corcoran searched the vehicle and then retrieved a second gun found on the spare tire in the trunk of the defendant’s car. Thereafter, Officer Corcoran brought both *242 guns and the defendant’s car to the 113th Precinct where he vouchered them and conducted an inventory search of the car wherein he recovered three bags of white powder from the console as well as a scale containing a white powdery substance. A search of the defendant’s person yielded one deck of white powder from the defendant’s wallet.
At the hearing, the defendant called Kevin Hinkson, a private investigator who had retired from the New York City Police Department after 17 years, who testified that the phrase “shots fired” was particularly police jargon which is taught at both the police academy and in training sessions. It was also established that no ballistic or other evidence was recovered at the scene to substantiate the fact that any shots had, in fact, been fired.
Conclusions of Law
Initially, with regard to the defendant’s request for the court to direct the police officers to provide voice exemplars, the court notes that the defendant cites no authority to support the granting of the extraordinary relief he seeks and the court believes this to be a case of first impression.
In determining the defendant’s request, the court notes that discovery by a defendant is governed by CPL 240.20. Items not enumerated in CPL 240.20 dealing with discovery in criminal cases are not discoverable as a matter of right unless constitutionally or otherwise specifically mandated. (People v Colavito, 87 NY2d 423 [1996].)
The defendant’s discovery motion for voice exemplars of the arresting officers appears to be governed by CPL 240.20 (1) (h) which states, in substance, that a defendant can seek discovery of items required to be disclosed by the New York State or Federal Constitution, i.e., Brady material.
Clearly, however, what the defendant has requested here does not qualify as the production of actual Brady material, but rather is in the nature of an inquiry based upon an allegation of misconduct.
The defendant’s request is both extraordinary and accusatory in nature. The court is cognizant that competing public policy considerations would come into play with regard to its consideration.
This court believes that compelling the police to submit to procedures which inherently question their integrity should not be undertaken lightly and to do so based upon mere bald *243 allegations or suppositions would undermine the public trust in the police and seriously undermine police morale.
It is the court’s opinion that the granting of the type of relief requested herein should not be ordered in the absence of substantial and credible evidence of wrongdoing by the police tending to exculpate the defendant. Requiring such a threshold would, at a minimum, not encourage a plethora of spurious allegations by defendants seeking to turn the tables on the police and place them in the position of being the accused.
At the same time, actual police misconduct cannot be countenanced by the court if the public is to retain its trust in the criminal justice system, and where evidence of true misconduct exists, the courts must not be perceived as turning a blind eye.
In any event, with regard to the present case, based upon the credible evidence as was adduced at the hearing the court finds that no credible evidence exists to support the allegation of police misconduct in this case.
The defendant’s position that the phrase “shots fired” is a term of art used exclusively by police is not persuasive. In light of the large number of police dramas and crime investigations on television and in the print media, the term can surely be viewed as one of common parlance which may be used by civilians as well as by law enforcement. Nor does the failure to recover ballistic evidence establish wrongdoing by the police.
Based upon the foregoing, the defendant’s motion seeking voice exemplars of the officers is denied in all respects.
With regard to the Mapp hearing, the court finds the initial approach of the defendant’s car to have been lawful as was the request for the defendant’s license and registration. (People v Carvey, 89 NY2d 707 [1997]; People v Ingle, 36 NY2d 413 [1975]; People v Forbes, 283 AD2d 92 [2001], lv denied 97 NY2d 681 [2001].)
The shining of the flashlight into the vehicle wherein Police Officer Speciale saw a gun on the console was likewise lawful. As stated by the Court in People v Goldring (186 AD2d 675 [1992]), “it is beyond dispute that the action of a police officer in shining his flashlight to illuminate the interior of a car, without probable cause to search the car [violated] no right secured * * * by the Fourth Amendment” (internal quotation marks omitted). Once the officers saw that the gun was in the car, they had probable cause to arrest the defendant (see, e.g., Horton v California, 496 US 128 [1990]; People v Beriguette, 84 NY2d 978 [1994]) and seize the gun.
*244 Penal Law § 265.15 (3) states, in pertinent part, “The presence in an automobile * * * of any firearm * * * is presumptive evidence of its possession by all persons occupying such automobile at the time * * * [it] is found.”
The securing of the car at the scene by Police Officer Corcoran and the search of the trunk was lawful based upon the automobile exception to the warrant requirement. (People v Langen, 60 NY2d 170 [1983]; People v Belton, 55 NY2d 49.)
Additionally, under appropriate circumstances, as herein, a permissible search for weapons can extend into the trunk of a car (People v Mundo, 286 AD2d 592 [2001], affd 99 NY2d 55 [2002]).
The inventory search of the car at the precinct was reasonable and conducted in compliance with established police procedure (People v Galak, 80 NY2d 715 [1993]). Therefore, the recovery of the drugs and a scale by Police Officer Corcoran from the front console was lawful.
Additionally, the subsequent search of the defendant at the precinct wherein drugs were recovered from the defendant’s wallet was incident to a lawful arrest. (People v Carrasquillo, 54 NY2d 248 [1981].)
Contrary to the defendant’s argument, the instant facts can be distinguished from those in Florida v J.L. (529 US 266 [2000]) and People v Folk (284 AD2d 476 [2001]) in that in those cases the police officers not only stopped the defendant but also conducted a frisk. In the instant case, the car was already stopped and the defendant was merely asked to step out of his parked vehicle which resembled the description and was in the same location given in the anonymous 911 call.
Accordingly, the defendant’s motion to suppress physical evidence is in all respects denied.